IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BRIAN KEITH COLE, #435854,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-00751 |
| ) | Judge Trauger |
| **TENNESSEE DEPARTMENT OF** ) | |
| **CORRECTIONS, et al.,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Brian Cole, a state prisoner incarcerated at the Trousdale Turner Correctional Center (TTCC), has filed a pro se Complaint for violation of civil rights under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2). The plaintiff has also filed a Motion for Appointment of Counsel. (Doc. No. 5.)

The case is before the court for ruling on the plaintiff's IFP application and Motion, and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. APPLICATION TO PROCEED IFP**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from the plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 2) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which the plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of:

(a) 20% of the average monthly deposits to the plaintiff's credit at the jail; or (b) 20% of the average monthly balance to the plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of the plaintiff's preceding monthly income (or income credited to the plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this order to the warden of the facility in which the plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If the plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this order follows the plaintiff to his new place of confinement, for continued compliance with the order. All payments made pursuant to this order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

A. LEGAL STANDARD

The court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also id.* § 1915(e)(2) (requiring dismissal "at any time" such determination is made in a case filed IFP).

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure

2

12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. ALLEGATIONS AND CLAIMS

The plaintiff alleges that he was stabbed multiple times by another inmate during an altercation on the evening of February 3, 2024. (Doc. No. 1 at 21.) He did not receive medical attention for his wounds that night. (*Id.*) In the early morning hours of February 4, the plaintiff was escorted from his housing unit to the segregation unit, where he was subjected to a strip search in view of other inmates and then placed in his new cell, which "was unclean." (*Id.* at 21–22.) The plaintiff's request for cleaning supplies in light of his "open wounds" was denied at that time. (*Id.* at 22.)

3

Several hours later, in the midmorning of February 4, the plaintiff was served with a disciplinary report justifying his temporary placement in segregation, which was signed in the wrong place and failed to mention that he was injured during the incident that brought about the disciplinary investigation and charge. (*Id.* at 22–23.) Later in the day on February 4, the plaintiff complained to a nurse performing daily rounds, Nurse Ebert, that he was in pain from his stab wounds. Nurse Ebert "diagnosed" the wounds as minor and advised the plaintiff to keep them clean and he would be fine. (*Id.* at 31.) The next day, February 5, 2024, two officers interrogated the plaintiff about a different incident they believed to be connected to the plaintiff's incident. (*Id.* at 32.) The plaintiff informed them that he was still bleeding from his stab wounds, and the officers called Nurse Ebert. Nurse Ebert cleaned the plaintiff's wounds, which he again diagnosed as minor. (*Id.*) On February 6, the plaintiff's wounds were again cleaned by two nurses, who also gave him bandages and ointment. (*Id.*)

On February 9 or 10, 2024, the plaintiff began having chest pains and problems breathing, and he vomited. (*Id.*) After a different nurse checked on him, the plaintiff was sent to the county hospital for x-rays and a CAT scan. (*Id.*) Test results indicated that he had bruising on both lungs and fluid in his chest and lungs, with "some infection" around his stab wounds. (*Id.* at 33.) The plaintiff was given IV antibiotics and was prescribed oral medications as well. (*Id.*)

On February 26, 2024, the plaintiff's disciplinary hearing was held. He attended and was heard in response to the charge against him but was put "under extreme duress" when the TDOC contract monitor "firmly told [him] to stop reciting policy" or he would be expelled from the hearing. (*Id.* at 23.) With his defense thus "restricted," the plaintiff was found guilty of the disciplinary charge. (*Id.* at 24.)

On March 7, 2024, the plaintiff and his cellmate were reassigned to a different housing unit. (*Id.* at 34.) Their new cell was "congested with OC spray" fumes,[1] making it hard to breathe. (*Id.*) When they complained, the plaintiff and his cellmate were told that they could not relocate and that the fumes would "die down." (*Id.* at 35.) Although residue from the spray was all over the cell, cleaning supplies were not provided. (*Id.*)

The plaintiff claims that his grievances have not been properly processed. (*Id.* at 35–36.) On one occasion, the plaintiff received delivery of legal mail that had already been opened. (*Id.* at 29.) On two occasions, March 22 and April 24, 2024, he was denied his breakfast meal. (*Id.* at 29, 35–26.)

The claims of the Complaint are asserted under the Eighth and Fourteenth Amendments to the U.S. Constitution, Sections 13 and 32 of Article I of the Tennessee Constitution, and Sections 4-3-603 and -606 of the Tennessee Code. (*Id.* at 17.) The Complaint seeks to recover damages and injunctive relief. (*Id.* at 38–39.)

C. ANALYSIS

The gravamen of the Complaint is the plaintiff's claim based on a two-day delay in receiving medical attention for his stab wounds. He summarizes his injuries as follows:

> When I was stabbed on February 3rd my wounds weren't properly cleaned by medical staff until the 5th of February. They were cleaned again on February 6th. When my condition worsen[ed] I was sent to Trousdale Medical on February 10th where I received x-rays, cat scan, and my wounds were cleaned thoroughly. An IV was hooked up to me to run antibiotics through my body. I was also given a TB shot, then I was prescribed multiple medication[s]. I also suffered mental and emotional pain that I complained to mental health about.

(Doc. No. 1 at 37.)

---

[1] OC (oleoresin capsicum) spray is pepper spray. *See* https://www.ojp.gov/pdffiles1/nij/grants/181655.pdf (last visited Mar. 10, 2025).

An Eighth Amendment violation is colorably claimed when prison officials are deliberately indifferent to a prisoner's serious medical needs. Such a claim has both an objective and a subjective component. As applied to this case, the objective component requires that the plaintiff's wounds presented a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), *i.e.*, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If they did present such a need, the subjective component requires that the defendants understood, yet consciously disregarded, that need to treat the plaintiff's condition without delay. *See Rhinehart*, 894 F.3d at 738. "When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay" violates the prisoner's Eighth Amendment rights. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). *See also Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (describing deliberate indifference as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm") (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to the plaintiff, it does not support a plausible claim that his constitutional right to adequate medical care was violated at TTCC. Assuming for purposes of initial review that the plaintiff's wounds presented an obvious, sufficiently serious need for medical treatment, TTCC staff did not disregard that need. According to the plaintiff, he was wounded between "approximately 6:45 pm – 7:45 pm" on February 3, 2024 (Doc. No. 1 at 24), and a nurse first examined his wounds during "daily rounds" the following day, February 4. (*Id.* at 31.) The

6

Case 3:24-cv-00751     Document 6     Filed 03/14/25     Page 6 of 10 PageID #: 78

plaintiff's wounds were not cleaned by the nurse until February 5, but on both days the nurse assessed the wounds as "minor." (*Id.* at 31–32.) The plaintiff does not allege the number of stab wounds he suffered or provide any detail about them, other than to describe them as "open." (*Id.* at 31.) Those wounds were cleaned by prison nurses on February 5 and 6, when they were also treated with "bandaids [and] ointment" (*Id.* at 32.)

Several days later, after the plaintiff displayed other symptoms and was sent to the hospital, internal bruising and fluid build-up were diagnosed. (*Id.* at 33.) But these allegations do not plausibly support a finding that care for the plaintiff's stab wounds was delayed for non-medical reasons by nurses at TTCC, or by officials who took the inmates involved in the violent altercation directly to segregation (where they believed that nurses were available to tend to the inmates' injuries (*id.* at 30)) rather than first taking them to the medical unit. At best, the plaintiff's allegations may support a claim that prison staff *negligently* delayed in providing wound-care, bandages, and antibiotic ointment. But demonstrating "that a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under the Eighth Amendment. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Kellerman v. Simpson*, 258 F. App'x 720, 725 (6th Cir. 2007) ("Allegations of medical malpractice or negligent medical care are insufficient to show a violation of the Eighth Amendment."); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). In sum, the plaintiff fails to state an Eighth Amendment claim for inadequate medical care.

The Complaint's other allegations do not support any viable claim under the Eighth or

Fourteenth Amendments. The plaintiff appears to assert his due process rights in claiming that his ability to defend himself during his disciplinary hearing was compromised when the TDOC contract monitor threatened him with expulsion if he did not "stop reciting policy." (Doc. No. 1 at 23.) However, "[a] prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2 (6th Cir. July 28, 2022) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)). "The mere fact of discipline or the imposition of sanctions in prison does not automatically trigger due process protections." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Here, even if due process safeguards were required, the alleged admonishment of the plaintiff to refrain from continuing to recite policy to the hearing officer would not violate any due process right. Even witnesses and documentary evidence may be excluded from a prison disciplinary hearing if they are "irrelevant or repetitive." *Scruggs v. Jordan*, 485 F.3d 934, 939–40 (7th Cir. 2007). It follows that repetitive references to the policies in place at the prison may also be curtailed by officials presiding at a prison disciplinary hearing, who "must have the necessary discretion to keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566.

The plaintiff's bare assertion that he was assigned to a cell where OC spray fumes lingered —without further factual allegations to show that the lingering fumes posed an unreasonable risk to the plaintiff's health that any defendant knew of but disregarded—is insufficient to support a plausible Eighth Amendment claim. *See Gardner v. Mack*, No. CIV.A. 12-0281-CG-C, 2015 WL 877249, at *22 (S.D. Ala. Mar. 2, 2015). His complaint that he has filed "multiple grievances" that

were not properly processed, were deemed inappropriate, or were otherwise dismissed without a hearing in violation of prison rules concerning the grievance chairperson's obligations (Doc. No. 1 at 35–36) fails because it is "conclusory and not specific to any grievance," *Bell v. Washington*, No. 22-2132, 2023 WL 6438597, at *4 (6th Cir. Sept. 29, 2023), and because "there is no inherent constitutional right to an effective prison grievance procedure." *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Finally, in the absence of any demonstration of resulting harm, the plaintiff fails to state a viable constitutional claim based on a single instance of legal mail being opened outside of his presence, *see Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (citing *Lewis v. Grider*, 27 F. App'x 282, 283 (6th Cir. 2001) (prisoner's claim for interference with access to courts through opening legal mail failed, "as he alleged no prejudice to any pending litigation"), or two instances (one month apart) of not being served his breakfast meal. *See Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (finding that denial of "seven meals over six days between 2008 and 2009" did not rise to the level of an Eighth Amendment violation) (citing *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982)).

Accordingly, the Complaint fails to state any viable claim under federal law. Moreover, its state-law claims (*see* Doc. No. 1 at 17) under Sections 13 and 32 of Article I of the Tennessee Constitution (pertaining to state legislators' privilege from arrest and state legislative action following an amendment to the federal Constitution, respectively) and Sections 4-3-603 and -606 of the Tennessee Code (pertaining to the powers and duties of the Tennessee Department of Correction and its Commissioner) also fail to suggest any plausible right to relief. The entire action will therefore be dismissed for failure to state a claim upon which relief may be granted. If the plaintiff wishes to sue for medical negligence, he must do so in state court.

## III. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.

In light of this disposition, the plaintiff's Motion for Appointment of Counsel (Doc. No. 5) is **DENIED** as moot.

The court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge